```
                                                          FILED
                                                    U.S. DISTRICT COURT
**DAVID J. HOLDSWORTH (4052)**                      2018 NOV -7 A 11: 04
Attorney for Plaintiff
9125 South Monroe Plaza Way, Suite C                 DISTRICT OF UTAH
Sandy, UT 84070                                     BY:_____
Telephone (801) 352-7701                              DEPUTY CLERK
Facsimile (801) 567-9960
david_holdsworth@hotmail.com                         RECEIVED CLERK

                                                       NOV 05 2018

                                                     U.S. DISTRICT COURT
```

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| TROY COLVIN, | **COMPLAINT** |
| | **(JURY TRIAL DEMANDED)** |
| Plaintiff, | |
| v. | |
| RIO TINTO, aka Kennecott Utah Copper, | Case: 2:18-cv-00871 |
| Defendant. | Assigned To : Wells, Brooke C. |
| | Assign. Date : 11/5/2018 |
| | Description: Colvin v. Rio Tinto |

COMES NOW Troy Colvin, Plaintiff herein, complains of Defendant Rio Tinto (hereinafter referred to as "Rio Tinto"), demands trial by jury, and as and for causes of action, alleges as follows:

### NATURE OF THE CASE

This is a civil action for redress and damages arising from the Rio Tinto's interference with and deprivation of Mr. Colvin's rights to leave and non-retaliation secured by the Family & Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, et seq. Mr. Colvin is also asserting violations of the Americans with Disabilities Act ("ADA"), in the form of failure to afford him reasonable accomodations and retaliating against him for engaging in protected activity.

# PARTIES

1. Mr. Colvin is an individual who is a citizen of the United States and a resident of the State of Utah. He is a former employee of Rio Tinto.

2. Rio Tinto is a business entity which does business in the State of Utah. Mr. Colvin alleges that at all times relevant to this action, Rio Tinto employed 50 or more employees within a 75 mile radius of Mr. Colvin's work site and, therefore, was and is subject to the coverage scheme of the FMLA. Mr. Colvin alleges that Rio Tinto is an "employer" with the meaning of the FMLA and the ADA. Mr. Colvin alleges Rio Tinto was his employer during the period of time relevant to this action. Mr. Colvin alleges Rio Tinto sometimes referred to his employer as Kennecott Utah Copper.

# JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to federal question — namely, the interpretation and application of Family and Medical Leave Act of 1993 and ADA, 29 U.S.C. § 2601 et. seq., to the facts alleged, and 28 U.S.C. §§ 1331, 1343 and 42 U.S.C. § 1983.

4. Rio Tinto is an "employer" within the meaning of the FMLA, 29 U.S.C. § 2611 (4), and the ADA, and its actions and inactions as alleged in this Complaint form the basis for Mr. Colvin's claims.

5. At all times relevant to this action, the individual(s) whose actions are complained of herein are and/or were employees or agents of Rio Tinto, and for all

purposes herein, acted within the course and scope of their employment with and for Rio Tinto such that their actions and inactions are attributable to Rio Tinto.

6. Mr. Colvin alleges that at the time when the actions complained of herein occurred, Mr. Colvin had been working for Rio Tinto for at least 12 months, and, on information and belief, had worked at least 1,250 hours during the previous 12-month period so as to be eligible for FMLA leave and protection. Mr. Colvin also alleges he was a person with a disability and a qualified individual with a disability.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 in that the claims arose in Salt Lake County, State of Utah, Rio Tinto employed Mr. Colvin in the State of Utah; all of the employment practices alleged herein were committed within the State of Utah; and the relevant employment records are maintained in the State of Utah.

## BACKGROUND FACTS

8. At the time of the actions and decisions alleged herein, Mr. Colvin was working as a water truck driver in the Bingham Canyon mine. He had a good work record. He had worked for Rio Tinto for about ten-and-a-half years.

9. Mr. Colvin alleges a separation from his wife, and his wife's death, his daughter's mental health issues, caused him to develop his own mental health issues including severe depression which qualify as "serious health conditions" within the meaning of the FMLA. and as a "disability" within the meaning of the ADA.

3

10. At various times during his employment with Rio Tinto, Mr. Colvin suffered various serious health conditions and disabilities and, at various times, applied for leave under the FMLA and requested various reasonable accomodations under the ADA.

11. For example, on February 21, 2011, Mr. Colvin applied for FMLA leave. His health care provider at the time, C. Hung Gee, M.D., provided a health care provider certification communicating that Mr. Colvin would need to take FMLA on an intermittent basis because of the need to drive a family member for medical treatment.

12. On January 4, 2012, Mr. Colvin applied for FMLA leave and Dr. Gee signed a similar (and updated) health care provider certification.

13. On January 4, 2013, Mr. Colvin applied for FMLA leave and Dr. Gee signed a similar (and updated) health care provider certification.

14. On August 1, 2016, Dr. Gee signed a similar (and updated) health care provider certification.

15. In approximately early 2016, Mr. Colvin and his wife separated.

16. In October 2016, Mr. Colvin and his wife got back together.

17. On December 17, 2016, Mr. Colvin's wife passed away. This very adversely affected the mental health of Mr. Colvin's teenage daughter, M.A.C., and Mr. Colvin's own mental health.

18. On January 12, 2017, Mr. Colvin applied for FMLA leave and Dr. Gee signed a similar (but updated) health care provider certification.

19. From January 2017 to approximately June 2017, Mr. Colvin used approximately 27 days of leave which were FMLA protected.

20. Thus, from 2011 to 2017, Mr. Colvin applied for leave under the Family and Medical Leave Act on an intermittent basis for his family issues and his own serious health conditions.

21. Rio Tinto had historically approved Mr. Colvin's requests for leave under the FMLA.

22. But in approximately June 2016, Dan Gallagher became Colvin's first line supervisor, (Ryan Higley had been Mr. Colvin's prior supervisor from January 2015 until June 2016.)

23. Mr. Gallagher came to understand that Mr. Colvin had applied for FMLA leave in the past and was currently using FMLA for various serious health conditions. Thereafter, Mr. Gallagher began to interfere with Mr. Colvin's requests for leave under the FMLA and to retaliate against Mr. Colvin.

24. On information and belief, Mr. Colvin alleges that Mr. Colvin's exercising of his rights to use FMLA leave and to apply for, be approved for and use FMLA leave was a source of irritation, frustration and anger for Mr. Gallagher towards Mr. Colvin.

5

25. On information and belief, Mr. Colvin alleges that, after Mr. Gallagher became Mr. Colvin's supervisor, about a month later, Mr. Gallagher went back to review Mr. Colvin's attendance during the prior year and then issued Mr. Colvin a written warning for unsatisfactory attendance (even though Ryan Higley had not done anything like that).

26. On information and belief, Mr. Colvin alleges that, after Mr. Gallagher did so, Mr. Gallagher continued to take various adverse actions against Mr. Colvin to interfere with his rights under the FMLA and to retaliate against him for exercising his rights under the FMLA.

27. Such actions included, but were not limited to, ignoring Mr. Colvin's approval for intermittent FMLA leave, denying Mr. Colvin's requests for more time off, requiring Mr. Colvin to work mandatory overtime shifts/days (lasting up to 12-and-a-half hours per shift), assigning Mr. Colvin menial, unpleasant and unfavorable tasks, not allowing Mr. Colvin to work more favorable tasks, swearing at Mr. Colvin, treating him abusively, yelling at him, talking to other coworkers about Mr. Colvin's personal and family problems, accusing Mr. Colvin of sleeping on the job and sneaking in late to work, issuing ever escalating levels of discipline to Mr. Colvin and ultimately terminating his employment.

28. On June 14, 2017, Rio Tinto, through the instigation of Mr. Gallagher, terminated Mr. Colvin's employment for unsatisfactory attendance even though some days Mr. Colvin missed were FMLA protected and he had made requests for reasonable accomodation in the form of asking for additional time off.

6

29. Mr. Colvin alleges such actions and inactions constitute violations of the anti-interference and/or anti-retaliation provisions of the FMLA. and constitute violations of the duty to accomodate under the ADA and the non-retaliation provisions of the ADA

30. Mr. Colvin alleges these actions and inactions on the part of Rio Tinto supervisor(s) damaged Mr. Colvin's physical and psychological health and caused an aggravation of his anxiety and depression and other conditions, cost him his job, and the wages and benefits that came with such job, and cost him his career. with Rio Tinto

--

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### VIOLATION OF THE FMLA—INTERFERENCE

31. Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 30 above.

32. The FMLA, 29 U.S.C. §2612(a)(1) provides:

[A]n eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period... (D)

33. In 2017, Mr. Colvin was from suffering various serious health conditions.

34. Mr. Colvin appropriately and timely requested FMLA leave which complied with 29 U.S.C. § 2613 (a) and (b). By so doing, he engaged in protected activity.

35. As Mr. Colvin sought to apply for and use his FMLA leave, Rio Tinto's supervisor, Don Gallagher, interfered with his rights under the FMLA.

36. As set forth above, after Mr. Colvin applied for and used his FMLA leave, Rio Tinto interfered with Mr. Colvin's entitlement to take FMLA leave, and it disciplined him and then terminated his employment, in part or in whole, because of his needing to use FMLA leave, his applying for FMLA leave, and his using FMLA leave.

37. By engaging in the actions and inactions set forth above, Rio Tinto violated the non-interference provisions and protections of the FMLA.

38. Such violations have caused Mr. Colvin losses, injuries and other damages.

39. Such violations have caused Mr. Colvin loss of wages and other benefits and privileges of his employment.

40. Such violations have also caused Mr. Colvin physical and psychological distress.

41. Pursuant to 29 U.S.C. § 2617, Rio Tinto is liable to Mr. Colvin for all wages, wage increases and benefits, and other compensation, to which he would have been entitled but for Rio Tinto's violation of the FMLA, prejudgment interest on

those losses, and an additional amount as liquidated damages equal to the damages (Mr. Colvin alleging that such violations were wilful) plus prejudgment interest thereon, reasonable attorney's fees, reasonable expert witness fees and any other costs of this action, and for such other and further equitable relief as this Court deems appropriate.

## SECOND CAUSE OF ACTION
## VIOLATION OF FMLA—RETALIATION

42. Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 41 above.

43. The FMLA, 29 U.S.C. §2612(a)(1) provides:

[A]n eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period... (D)

44. In 2017, Mr. Colvin was suffering from various serious health conditions.

45. Mr. Colvin appropriately and timely requested FMLA leave which complied with 29 U.S.C. § 2613 (a) and (b). By so doing, he engaged in protected activity.

46. As Mr. Colvin sought to apply for and use his FMLA leave, Rio Tinto's supervisor, Don Gallagher, retaliated against Mr. Colvin for exercising his rights under the FMLA.

47. After Mr. Colvin applied for and used his FMLA leave, *Mr. Gallagher* took various adverse actions against him.

48. As set forth above, Rio Tinto interfered with Mr. Colvin's entitlement to take FMLA leave, and it disciplined him and then terminated his employment, in part or in whole, because of his needing to use FMLA leave, his applying for FMLA leave, and for using FMLA leave.

49. Such actions included, but were not limited to, ignoring Mr. Colvin's approval for intermittent FMLA leave, denying Mr. Colvin's requests for more time off, requiring Mr. Colvin to work mandatory overtime shifts/days (lasting up to 12-and-a-half hours per shift), assigning Mr. Colvin menial, unpleasant and unfavorable *tasks*, not allowing Mr. Colvin to work more favorable tasks, swearing at Mr. Colvin, treating him abusively, yelling at him, talking to other coworkers about Mr. Colvin's personal and family problems, accusing Mr. Colvin of sleeping on the job and sneaking in late to work, issuing ever escalating levels of discipline to Mr. Colvin and ultimately terminating his employment.

50. Mr. Colvin alleges Rio Tinto's decision to terminate Mr. Colvin's employment was retaliatory.

51. By engaging in the actions and inactions set forth above, Rio Tinto has violated the non-retaliation provisions and protections of the FMLA.

52. Such violations have caused Mr. Colvin losses, injuries and other damages.

53. Such violations have caused Mr. Colvin the loss of wages and other benefits and privileges of his employment.

54. Such violations have also caused Mr. Colvin physical and psychological distress.

55. Pursuant to 29 U.S.C. § 2617, Rio Tinto is liable to Mr. Colvin for all wages, wage increases, employee benefits, and other compensation, to which he would have been entitled but for Rio Tinto's violations of the FMLA, prejudgment interest on those losses, and an additional amount as liquidated damages equal to the damages (Mr. Colvin alleging that such violations were wilful) plus prejudgment interest thereon, reasonable attorney's fees, reasonable expert witness fees and any other costs of this action, and for such other and further equitable relief as this Court deems appropriate.

### THIRD CAUSE OF ACTION
### FOR VIOLATIONS OF THE AMERICANS
### WITH DISABILITIES ACT OF 1990

56. Mr. Colvin alleges he is a person with a disability in that he has severe depression, which is an impairment which substantially limits several of his major life activities including caring for himself, interacting with others, sleeping and working.

57. Mr. Colvin is a qualified individual with a disability in that he could perform the essential functions of the job he held or desired with various reasonable accomodations such as additional time off.

58. During his employment with Rio Tinto including in 2017, Mr. Colvin made various requests for accomodation in the form of requests for time off to deal with his wife's death and the effect it was

*[Handwritten insertion at top:] having on Mr. Colvin and his 3 minor children. Mr. Colvin also alleges Rio Tinto knew or should have known of his need for accommodation.*

*59. Despite his multiple requests and Rio Tinto's knowledge of Mr. Colvin's disability and the reasons for his requests for accommodation, Rio Tinto denied each request and then terminated Mr. Colvin's employment.*

Mr. Colvin, by and through his undersigned counsel and pursuant to Fed.R.Civ.P. 38, hereby demands a trial by jury of all issues triable of right by jury.

*[Handwritten insertion:] 60. By engaging in the actions and inactions set forth above, Rio Tinto has violated the nondiscrimination and non retaliation provisions and protections of the ADA.*

**PRAYER FOR RELIEF**

WHEREFORE, Troy Colvin hereby prays for the following relief:

1. On his First Cause of Action, for a judgment determining that Rio Tinto violated the FMLA and is, therefore, liable to Mr. Colvin for damages equal to his wages, employment benefits, or other compensation which were denied or lost to Mr. Colvin as a result of Rio Tinto's violations of the FMLA;

2. For prejudgment interest on his lost wages;

3. For liquidated damages in an amount equal to the sum of the amounts awarded in 1 and 2 above;

4. On his Second Cause of Action, for a judgment finding that Rio Tinto violated the FMLA and is, therefore, liable to Mr. Colvin for damages equal to his lost wages, employment benefits, or other compensation lost or denied to Mr. Colvin as a result of Rio Tinto's violations of the FMLA;

5. For prejudgment interest on his lost wages;

6. For liquidated damages in an amount equal to the sum of the amounts awarded in 4 and 5 above;

7. *[handwritten insertion]* On his Third Cause of Action, for a judgment determining that Rio Tinto violated the ADA and awarding him all appropriate relief

8. For Mr. Colvin's reasonable attorneys' fees, reasonable expert witness fees, and any other costs of the action;

9. For post-judgment interest on all amounts awarded to Mr. Colvin herein accruing from the date of judgment to the date of satisfaction of judgment awarded herein; and

10. For such other and further equitable relief as this Court deems appropriate under the circumstances.

DATED this 2nd day of November

/s/ David J. Holdsworth
David J. Holdsworth
*Attorney for Plaintiff*

13

## VERIFICATION

Troy Colvin , being first duly sworn, upon his oath, deposes and says that he is the Plaintiff in the above-entitled action, that he has read the foregoing COMPLAINT and understands the contents thereof, and the allegations made therein are true of his own knowledge, except as to those matters alleged on information and belief which he believes to be true.

                                                                               /s/ Troy Colvin
                                                                               Troy Colvin

SUBSCRIBED AND SWORN to before me, a Notary Public, this ____ day of July, 2018.

                                                                               NOTARY PUBLIC

MY COMMISSION EXPIRES:       RESIDING AT: _____